UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ERIC HAWKINS and LYNDA HAWKINS,

      Plaintiffs,

    v.

FIRST HORIZON HOME LOANS, a Division of First Tennessee Bank N.A., successor in interest by merger to First Horizon Home Loan Corporation, a Tennessee Corporation; FORT KNOX LENDING, a California Business Entity Form Unknown, CALIFORNIA HOME AND MORTGAGE, a California Business Entity Form Unknown; JAMES JABOUT, an individual, LOANGUY.COM, a California corporation, and DOES 1-10,

      Defendants.

_____/

Civ. No. S-10-1876 FCD/GGH

MEMORANDUM AND ORDER

1

----ooOoo----

This matter is before the court on defendant First Horizon Home Loans' ("Horizon")[1] motion to dismiss plaintiffs Eric and Lynda Hawkins'("plaintiffs") complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[2]  Plaintiffs oppose the motion.  For the reasons set forth below,[3] Horizon's motion is GRANTED.

## BACKGROUND

Plaintiffs reside at 8256 Waterwell Way in Tracy, California (the "Property").  (Compl., filed July 16, 2010 [Docket # 1], ¶ 1.)  In or around June 2006, plaintiffs contacted defendant James Jabout ("Jabout"), a friend of theirs and a mortgage broker employed by defendant California Home and Mortgage ("CH&M"), about obtaining a loan (the "Subject Loan" or "Construction Loan") to fund construction of a new home on their Property. (Id. ¶¶ 6, 16.)  Plaintiffs claim the Construction Loan would convert to a "permanent mortgage loan" when construction on the Property was finished.  (Id. ¶ 16.)  Plaintiffs also claim that no interest would be charged during the construction period, i.e., interest charges would begin only after the loan converted into a permanent loan.  (Id. ¶ 32; Decl. of K. Brian Matlock in Support of Compl., filed July 16, 2010 ["Matlock Decl."], Ex. D.)

_____

[1]     Horizon has merged into First Tennessee Bank National Association, N.A.

[2]     Fort Knox Lending, California Home and Mortgage, James Jabout, and Loanguy.com are also named defendants in this action; however, Horizon is the only defendant who has appeared.

[3]     Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 230(g).

1   According to plaintiffs, Jabout initiated the loan
2  application process without requesting documentation of income or
3  other financial information.  (Compl. ¶ 18.)  They contend that
4  Jabout, his employer CH&M, and Loanguy.com fabricated and
5  inflated their financial information on the final loan
6  application.  (<u>Id.</u> ¶ 20.)  Further, plaintiffs contend that
7  Horizon is liable for the alleged fabrication because Horizon is
8  in an agency relationship with all other defendants which ties
9  them either in this single incident or in an overarching
10  fraudulent course of conduct.  (<u>Id.</u> ¶ 9.)

11   Finally, plaintiffs contend that during the loan process
12  Horizon charged plaintiffs "numerous [j]unk fees" and failed to
13  make certain mandatory disclosures.  (<u>Id.</u> ¶¶ 75, 82, 89.)
14  Specifically, as to the non-disclosures, plaintiffs allege that
15  defendants failed to (1) "provide the required disclosures prior
16  to consummation of the transactions"; (2) "submit to [p]laintiffs
17  a consumer handbook on adjustable rate mortgages"; (3) "contain
18  the statement 'You are not required to complete this agreement
19  merely because you have received these disclosures or signed a
20  loan application' on the Good Faith Estimate"; (4) "fully explain
21  the terms of the Subject Loan and the second loan to [p]laintiffs
22  in a meaningful way"; (5) "submit the required Good Faith
23  Estimates of the disclosures within three days of [p]laintiffs'
24  initial application" (6) "submit the Special Information Booklet
25  to plaintiffs" (7) "disclose the current credit score of the
26  consumer or the most recent score of the consumer that was
27  previously calculated by the credit reporting agency for a
28  purpose related to the extension of credit"; (8) "disclose a

3

range of possible credit scores under the model used"; (9)
"disclose all of the key factors that adversely affected the
credit score of the consumer in the model used"; (10) "disclose
the date on which the credit score was created"; and (11)
"disclose the name of the person or entity that provided the
credit score or credit file upon which the credit score was
created" in violation of the Fair and Accurate Credit Transaction
Act ("FACTA"), the Real Estate Settlement and Procedures Act
("RESPA"), and the Truth in Lending Act ("TILA"). (Id. ¶¶ 73-
92.)

At the end of the loan application process, plaintiffs state
they received two loans: (1) the Construction Loan from Horizon
memorialized by a Residential Construction Loan Agreement and
other documents; and (2) a second loan from Horizon memorialized
by a Deed of Trust and other documents. (Id. ¶¶ 26, 35; Matlock
Decl., Exs. B-G.)

After receiving the loans, plaintiffs began building a home
on the Property, drawing on the Subject Loan during the
construction process. (Compl. ¶ 40.) They contend that during
this time interest accrued notwithstanding the parties' agreement
to the contrary. (Id.) Construction was completed in August
2007. (Id. ¶ 41; Matlock Decl., Ex. H.) At this time,
plaintiffs believed the Construction Loan would become a
"permanent loan." (Compl. ¶¶ 41-42.) However, plaintiffs allege
that Horizon refused to convert the Construction Loan. (Id. ¶
43.)

Thereafter, plaintiffs allege that they continued making
payments on the Subject Loan until their default in April 2008.

4

1  (Id. ¶ 44.)  Following default, plaintiffs requested and obtained

2  loan modification agreements from Horizon effective January 1,

3  2009.  (Id. ¶ 45; Matlock Decl., Ex. J.)

4      Approximately seven months later, in July 2009, plaintiffs

5  filed for bankruptcy.  (Compl. ¶ 49.)  After the conclusion of

6  plaintiffs' bankruptcy proceeding, Horizon instituted foreclosure

7  proceedings.  (Id. ¶ 51; Matlock Decl., Ex. T.)  Horizon filed a

8  first Notice of Default and Election to Sell in January 2010, and

9  an amended one in April 2010.  (Compl. ¶¶ 53, 54; Matlock Decl.,

10  Exs. L, U, V.)  No foreclosure sale has been noticed or

11  scheduled.  Plaintiffs filed this lawsuit on July 16, 2010.[4]

12      Plaintiffs bring forth sixteen causes of action: (1)

13  violations of the Truth in Lending Act, 15 U.S.C., sections 1601

14  et seq.; (2) violations of the  Real Estate Settlement and

15  Procedures Act, 12 U.S.C., sections 2601 et seq.; (3) violations

16  of the Fair and Accurate Credit Transaction Act, 15 U.S.C.,

17  sections 1681 et seq.; (4) common law intentional

18  misrepresentation; (5) statutory fraud; (6) breach of written

19  contract; (7) breach of fiduciary duty; (8) constructive fraud;

20  (9) negligent lending; (10) unjust enrichment; (11) violations of

21  the California Unfair Competition Law, California Business &

22  Professions Code Sections 17200 et seq. ("UCL"); (12) contractual

23  breach of good faith and fair dealing; (13) predatory lending

24  practices; (14) violation of California Civil Code, section

25

26      [4]  Plaintiffs subsequently filed a Motion for Preliminary
   Injunction on September 10, 2010.  Horizon filed an Opposition on
27  October 8, 2010, which was followed by plaintiffs' Reply on
   October 15, 2010.  The court heard the matter on October 22, 2010
28  and denied plaintiffs' Motion.

1916.7(c) ("Section 1916.7"); (15) violation of California Civil

COde, section 2923.6 ("Section 2923.6"); and (16) fraudulent

inducement to contract.

**STANDARDS**

Under Federal Rule of Civil Procedure 8(a), a pleading must

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." See Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949 (2009).  Under notice pleading in federal

court, the complaint must "give the defendant fair notice of what

the claim is and the grounds upon which it rests." Bell Atlantic

v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations

omitted).  "This simplified notice pleading standard relies on

liberal discovery rules and summary judgment motions to define

disputed facts and issues and to dispose of unmeritorious

claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the

complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319,

322 (1972).  The court is bound to give plaintiff the benefit of

every reasonable inference to be drawn from the "well-pleaded"

allegations of the complaint. Retail Clerks Int'l Ass'n v.

Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

allege "'specific facts' beyond those necessary to state his

claim and the grounds showing entitlement to relief." Twombly,

550 U.S. at 570.  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S. Ct. at 1949.

/////

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

7

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.   Violation of TILA**

Plaintiffs' first cause of action asserts both a rescission and damage claim for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Compl. ¶ 78.) Specifically, plaintiffs allege that defendants (1) "fail[ed] to provide the required disclosures prior to consummation of the transactions"; (2) "fail[ed] to submit to [p]laintiffs a consumer handbook on adjustable rate mortgages"; (3) "fail[ed] to contain the statement 'You are not required to complete this agreement merely because you have received these disclosures or signed a loan application' on the Good Faith Estimate"; (4) "fail[ed] to fully explain the terms of the Subject Loan and the second loan to [p]laintiffs in a meaningful way"; (5) "fail[ed] to submit the required Good Faith Estimates of the disclosures within three days of [p]laintiffs' initial application"; and (6) engaged in "predatory lending" by "extending credit[] to [p]laintiffs. . . without regard to [p]laintiffs' repayment ability." (Compl. ¶ 75; Pls.'s Opp.'n ["Opp.'n"], filed Oct. 20, 2010 [Docket #18], 3-4.)

Defendant Horizon argues that plaintiffs' TILA claims are time barred. (Horizon's Motion to Dismiss ["MTD"], filed October

8

8, 2010 [Docket #15], 6-9).  Plaintiffs respond that the
statutory period has not expired based on equitable tolling
and/or the continuing violation doctrine.  (Opp.'n at 3-4.)

**1.  Rescission**

Rescission claims under TILA "shall expire three years after
the date of consummation of the transaction or upon the sale of
the property, whichever occurs first."  15 U.S.C. § 1635(f).

Further, equitable tolling does not apply to rescission
under this provision of TILA.  If the borrower files his or her
suit over three years from the date of a loan's consummation, a
court is powerless to grant rescission.  <u>Miguel v. Country
Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir 2002) ("[S]ection
1635(f) represents an 'absolute limitation on rescission actions'
which bars any claims filed more than three years after the
consummation of the transaction." (quoting <u>King v. California</u>,
784 F.2d 910, 913 (9th Cir. 1986)); <u>accord</u> <u>Beach v. Ocwen Fed.
Bank</u>, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely
extinguishes the right of rescission at the end of the 3-year
period.").  If a borrower exercises her right to rescind within
the three-year limitation period, such action only entitles the
borrower to damages, not rescission.  <u>Cazares v. Household Fin.
Corp.</u>, No. CV 04-6887 DSF, 2005 U.S. Dist. LEXIS 39222, at *24-25
(C.D. Cal. 2005) (citing 15 U.S.C. § 1640(a); <u>Belini v. Wash.
Mut. Bank, FA</u>, 412 F.3d 17 (1st Cir. 2005)).

In this case, plaintiffs allege they consummated the Subject
Loan on or about September 11, 2006.  (Compl. ¶ 26.)  Plaintiffs
did not bring the instant action until July 16, 2010;
accordingly, more than three years has passed since the alleged

TILA violations.  15 U.S.C. § 1640(e).  As such, Horizon's motion to dismiss plaintiffs' recision claim under TILA is GRANTED without leave to amend.

### 2.   Damages

TILA provides that a plaintiff can bring an action to recover damages "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  As stated above, plaintiffs bring this action approximately four years after consummation of the loan; accordingly, their TILA claims are time-barred.

### a.   Continuing Violation

Plaintiffs argue that their claims are timely because defendants engaged in "predatory lending," which they assert is a continuing violation of TILA.  However, the Ninth Circuit has expressly rejected the continuing violation theory as applied to claims for damages brought under TILA.  King, 784 F.2d at 914. In King, the Ninth Circuit stated that the theory is "unrealistically open ended" and "exposes the lender to a prolonged and unforeseeable liability that Congress did not intend."  Id.  Accordingly, Horizon's motion to dismiss plaintiffs' predatory lending claim is GRANTED without leave to amend.

### b.   Equitable Tolling

Alternatively, plaintiffs argue that equitable tolling applies to extend the statute of limitations.  (Compl. ¶ 77.) Specifically, plaintiffs claim they "had no reasonable opportunity to discover the. . . [alleged] violations until

around August 2009"[5] because they relied on "their friends and business partners [to] act truthfully and in [p]laintiffs['] best interest" regarding the execution of the loans. (Compl. ¶¶ 39, 77.)  Consequently, plaintiffs state they were not provoked to inquire into the alleged violations until after the statutory period had passed. (Id. at 48.)

To establish excusable delay, a plaintiff must show "fraudulent conduct by the defendant resulting in concealment of the operative facts, the plaintiff's failure . . . to discover the operative facts that are the basis of [his/her] cause of action within the limitations period, and *[his/her] due diligence . . . until discovery of those facts*." Federal Election Com'n v. Williams, 104 F.3d 237, 240-41 (9th Cir. 1996)(emphasis added). Equitable tolling "focuses on whether there was excusable delay by the plaintiff," and "does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).

The plaintiff must allege facts demonstrating that the TILA violations alleged could not have been discovered by due diligence *during the one-year statutory period*; otherwise, equitable tolling should not be applied and dismissal at the pleading stage is appropriate. Lingad v. Indymac Federal Bank, 682 F. Supp. 2d 1142, 1147 (2010). "Such factual underpinnings are all the more important . . . since the vast majority of [a plaintiff's] alleged violations under TILA are violations that

---

[5]    Inconsistently, plaintiffs' Opposition states the forensic audit was done "around November 2009." (Opp.'n at 3, 4.)  However, in this case, whether the audit was performed in August or November has no bearing on the court's decision.

1  are self-apparent at the consummation of the transaction.

2  Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT,

3  2009 WL 3157160, **13-14 (D. Ariz. Sept. 24, 2009).

4      Here, plaintiffs allegations are not sufficient to invoke

5  equitable tolling.  First, relying on a lender and assuming

6  correctness of the loan documents does not excuse plaintiffs from

7  conducting their own due diligence.  See e.g. Nichalson v. First

8  Franklin Financial Corp., No. 2:10-cv-00598-MCE-EFB, 2010 WL

9  3505089, **2-3 (E.D. Cal. Sept. 3, 2010)(finding a lack of due

10  diligence because the plaintiff did not review her loan

11  documents; instead, relying on her lenders and assuming that all

12  the information was true and correct).

13      Second, although plaintiffs eventually performed some due

14  diligence, it was not performed within the time allotted by TILA.

15  Indeed, plaintiffs state they did not begin their inquiry into

16  the alleged violations until August 2009, after the statute of

17  limitations period had ended.  See Kelley v. Countrywide Home

18  Loans, No. CV F 09-1148 LJO DLB, 2009 WL 3489422, **5-6 (E.D.

19  Cal. Oct. 26, 2009) (finding that equitable tolling was not

20  appropriate because the plaintiff had not shown anything which

21  prevented him from comparing his loan documents and TILA's

22  statutory and regulatory requirements within the statutory

23  period); Martinez v. EMC Mortg. Corp., No. CV F 09-0813 LJO GSA,

24  2009 WL 2043013, at *7 (E.D. Cal. Jul. 13, 2009) (same).

25      Without facts regarding why the alleged violations were not,

26  and could not have been, reasonably discovered until August 2009,

27  the court cannot equitably toll the statute of limitations in

28  this case.  As such, defendant Horizon's motion to dismiss

plaintiffs' claim for damages for violations of TILA is GRANTED
with leave to amend.

**B.   RESPA**

Plaintiffs' second claim is for violations of the Real
Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. 2601,
*et seq.* Specifically, plaintiffs allege Horizon "failed to
submit the Special Information Booklet to [p]laintiffs" in
violation of RESPA § 2604 and Horizon "charged [plaintiffs]
numerous [j]unk fees" constituting illegal kickbacks in violation
of RESPA § 2607.  (Compl. ¶ 82; Opp.'n at 6.)  Horizon moves to
dismiss these claims on the basis that (1) plaintiffs are not
afforded a private right of action under § 2604; and (2)
plaintiffs' § 2607 claim is time-barred.  (MTD at 10.)
Plaintiffs respond that their claims are valid and timely based
upon the application of equitable tolling.  (Opp.'n at 5-6.)

**1.   12 U.S.C. § 2604**

Numerous California district courts have concluded that no
private right of action exists for violation of § 2604.  See e.g.
Bassett v. Ruggles, No. CV-F-09-528, 2010 WL 1525554, *9 (E.D.
Cal. Apr. 15, 2010) (finding § 2604 does not authorize a private
remedy); Kerr v. American Home Mortg. Servicing, Inc., No.
10-cv-1612 BEN, 2010 WL 3743879, *1 (S.D. Cal. Sept. 23, 2010)
("Courts have consistently held. . . there is no private right of
action for alleged RESPA disclosure violations during the loan
origination process."); Pagtalunan v. Reunion Mortg. Inc., No.
C-09-00162, 2009 WL 961995, *3 (N.D. Cal. Apr. 8, 2009);
Agbabiaka v. HSBC Bank USA Nat'l Ass'n, No. C 09-05583, 2010 WL
1609974, *4 (N.D. Cal. Apr. 20, 2010) ("There is no private right

of action under RESPA for violations of Sections 2603 and

2604."). Consistent with the district courts in California the

court also holds that § 2604 does not provide plaintiffs with a

private right of action. Accordingly, Horizon's motion to

dismiss plaintiffs' RESPA § 2604 claim is GRANTED without leave

to amend.

### 2.   12 U.S.C. § 2607

The statute of limitations for bringing a claim under RESPA

§ 2607 is one year. 12 U.S.C. § 2614. More than one year has

passed since the alleged violations and, as set forth *supra*,

plaintiffs do not plead facts sufficient to invoke equitable

tolling. Thus, the Horizon's motion to dismiss plaintiffs' RESPA

§ 2607 claim is GRANTED with leave to amend.

## C.   FACTA

Plaintiffs' third claim for relief is based on Horizon's

alleged violation of the Fair and Accurate Credit Transactions

Act ("FACTA"), 15 U.S.C. § 1681, *et seq.* (Compl. ¶ 86-92.)

Specifically, plaintiffs' allege defendants willfully "failed to

provide [] disclosures [in violation of] Section 212(b) of

[FACTA]." (Compl. ¶¶ 88, 90.) Horizon responds that plaintiffs'

FACTA claim is time-barred and defectively plead. (MTD at 9.)

A plaintiff must bring a FACTA action within "2 years after

the date of discovery by the plaintiff of the violation that is

the basis for such liability." 15 U.S.C. § 1681p. "Under

federal law a cause of action accrues when the plaintiff is aware

of the wrong." Acri v. International Ass'n of Machinists &

Aerospace Workers, 781 F.2d 1393**,** 1396 (1986). That is, "when

the plaintiff 'knows or has reason to know of the injury which is

14

the basis of the action.'"   <u>Kemp v. Regents of University of</u>
<u>Cal.</u>, No. C-09-4687 PJH, 2010 WL 2889224 (N.D. Cal. July 22,
2010) (citing <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991-992 (9th Cir.
1999); <u>Trotter v. Int'l Longshoremen's & Warehousemen's Union</u>,
704 F.2d 1141, 1143 (9th Cir. 1983)).

Here, plaintiffs allege they did not receive the requite
disclosures when they executed the Subject Loan around September
12, 2006.  (Compl. ¶ 88-89.)  Yet, they did not file the current
action until July 16, 2010.  Plaintiffs assert they were unable
to ascertain the alleged non-disclosures until a forensic audit
was completed on the loan document in August 2009.  (<u>Id.</u> at 77.)
However, plaintiffs' tolling rationale fails for the same reason
their TILA and RESPA § 2607 tolling rationale fails: plaintiffs
plead no facts explaining why they were prevented from
discovering the alleged violations within the two year statutory
period.  <u>See</u> <u>Kelley</u>, 2009 WL 3489422 at **5-6 (finding that
equitable tolling was not appropriate because the plaintiff had
not shown anything which prevented him from comparing his loan
documents and the statutory and regulatory requirements within
the statutory period).  Accordingly, Horizon's motion to dismiss
plaintiffs' FACTA claim is GRANTED with leave to amend.[6]

---

[6]   Because the court finds that plaintiffs' FACTA claim is
time-barred it does not reach Horizon's second argument that the
FACTA claim is deficiently plead.  However, the court notes that
at least one California district court has found that FACTA
applies only to credit reporting agencies, and not mortgage
lenders.  <u>See</u> <u>Kakoqui v. American Brokers Conduit</u>, No. C 09-4841
JF (HRL), 2010 WL 1265201, *5 (N.D. Cal. Mar. 30, 2010)
("Plaintiff misapprehends the nature of [FACTA] in reading the
statute to require that lenders and brokers [must] make credit
scoring information available to borrowers.") (internal
quotations omitted).

**D.   Fraud**

Plaintiffs' fourth, fifth, and eighth claims for relief are based on the alleged fraud of defendant Horizon.  (Compl. ¶¶ 93-140, 160-164.)  Specifically, plaintiffs bring their claims based on three alleged bad acts: defendants' (1) fraudulent overstatement of their income on loan documents ("income fabrication"); (2) misrepresentation of when interest charges would begin ("interest misrepresentation"); and (3) refusal to convert plaintiffs' Subject Loan to a permanent loan ("non-conversion").  (Id.)  Horizon contends that (1) plaintiffs' claims are time-barred; (2)plaintiffs fail to meet the pleading standard of Rule 9(b); and (3) plaintiffs fail to link Horizon to any fraud.  (MTD at 11-12; Horizon's Reply to Pls. Opposition, [Docket #21], filed October 29, 2010 ["Reply"], at 6-7.)

**1.   Time-Bar**

A three year statute of limitations exists for fraud actions.  CCP § 338(d).  The accrual begins when the aggrieved party discovers the fraud or mistake.  Id.

In this case, plaintiffs fail to plead facts that demonstrate this litigation was timely filed with respect to their claims of income fabrication and interest misrepresentation.[7]  Rather, plaintiffs' exhibits demonstrate that the alleged fraud based upon income fabrication and interest

---

[7]    Plaintiffs' non-conversion claim is not time-barred. The alleged conversion was meant to take place at the end of the construction period, August 9, 2007. (Compl. ¶¶ 41-42).  A three year statute of limitations accorded plaintiffs until August 9, 2010 to file a fraud claim based on the alleged non-conversion. By filing the current action on July 16, 2010, plaintiffs are within the statutory period.

misrepresentation could have been discovered within the statutory period.  For example, the alleged income fabrication is listed in both the Allonge and the Uniform Underwriting and Transmittal Summary.  (Matlock Decl., Ex. D, O.)  Both of these documents are signed by plaintiffs in July and September 2006, respectively.  As such, plaintiffs were on notice of the alleged fraud approximately four years ago, but failed to investigate or file an action.

As to the alleged interest misrepresentation, Horizon correctly points out that paragraph 2.A of the Allonge is captioned "Interest During the Construction Period," and it reads in pertinent part: "Borrower will pay interest only, based on a 360-day year, on the amount advanced by the Note Holder at the rate of prime + 0% during the Construction Period of the loan, as such interest rate exists daily." (<u>Id.</u>)  As stated above the Allonge was signed by plaintiffs in September 2006; accordingly, they were on notice of any alleged improper charges at that time. Moreover, by Exhibit S, plaintiffs received invoices with interest charges from Horizon as early as June 2007; yet, plaintiffs did not file this action until July 16, 2010.  (<u>Id.</u> at Ex. S.)  Accordingly, these fraud claims are time-bared.

**2.   Failure to Meet Rule 9(b)'s Pleading Standard and Failure to Connect Horizon to Alleged Fraud**

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." <u>Gil v. Bank of Am., Nat'l Ass'n</u>, 138 Cal. App. 4th 1371, 1381 (2006).  "[T]o establish a cause of action for fraud a plaintiff must plead and

prove in full, factually and specifically, all of the elements of the cause of action. <u>Conrad v. Bank of America</u>, 45 Cal. App. 4th 133, 156 (1996). There must be a showing "that the defendant *intended* to induce the plaintiff to act to his detriment in reliance upon the false representation." <u>Conrad v. Bank of America</u>, 45 Cal. App. 4th 133, 156 (1996) (emphasis added).

Further, a court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). Therefore, the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. <u>Id.</u> at 1106 (citations omitted).

Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765-766 (9th Cir. 2007). When asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater. . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 645 (1996) (quoting <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 157 (1991)); <u>see also</u> <u>Edejer v. DHI Mortgage Co.</u>, No. C

1  09-1302, 2009 WL 1684714, *12 (N.D. Cal. June 12, 2009)

2  (dismissing a fraud claim, *inter alia*, where the plaintiff did

3  not allege any the names of the persons who made the allegedly

4  fraudulent representations and their authority to speak);

5  <u>Akhavein v. Argent Mortgage Co.</u>, No. 5:09-cv-00634, 2009 WL

6  2157522, *4 (N.D. Cal. July 17, 2009).

7         In the present case, plaintiffs allege that "[d]efendants

8  Jabout, LoanGuy.com and [CH&M] fabricated borrower's [sic]

9  financial information on the final loan application." (Compl. ¶

10  98).  They assert defendant Horizon was aware of the fabricated

11  financial information because (1) Horizon received the Uniform

12  Underwriting and Transmittal Summary with a handwritten note

13  stating that "[p]laintiffs' income would have to be 'stated' to

14  meet the required debt-to-income-ratio" (Compl. ¶ 99); and/or (2)

15  Horizon is in an agency relationship with all other defendants,

16  which ties them either in this single incident or in an

17  overarching fraudulent course of conduct.  (<u>Id.</u> ¶ 9.)

18         Plaintiffs' allegations are insufficient to meet the

19  heightened pleading standard of Rule 9(b).  First, plaintiffs do

20  not allege how the handwritten note demonstrates Horizon's

21  knowledge of alleged fraudulent activity.  Plaintiffs do not

22  allege that "income would have to be stated" is an indicator of

23  fraudulent activity in the mortgage loan industry or that the

24  phrase clearly indicates the income on the paperwork is

25  fabricated.  As such, standing alone, this allegation does not

26  show how Horizon would have knowledge that the income on the loan

27  documents was allegedly fabricated.

28  /////

1    Second, plaintiffs' assertion that Horizon is in an agency

2   relationship with all other defendants is conclusory; plaintiffs

3   do not allege any facts to show how Horizon authorized any other

4   defendant to represent and/or bind it.  Plaintiffs must allege

5   such facts to sufficiently apprise defendants of the nature of

6   the agency relationship.  Cal. Civ. Code § 2295; <u>J.L. v.</u>

7   <u>Children's Institute, Inc.</u>, 177 Cal. App. 4th 388, 403-404

8   (2009).  Accordingly, plaintiffs fail to show how Horizon was

9   connected to this fraudulent act.

10    Finally, plaintiffs fail to inform each specific defendant

11   of the allegation surrounding its alleged participation in the

12   fraud.   In this case "defendants" includes several entities and

13   an individual; however, contrary to what is required by Rule

14   9(b), plaintiffs failed to allege which defendant, let alone

15   which employee(s) at each entity-defendant, actually made the

16   supposedly false representations.

17    Accordingly, defendant Horizon's motion to dismiss

18   plaintiffs' claims for rescission and damages based on fraud are

19   GRANTED with leave to amend.

20   **E.    Breach of Contract**

21    Plaintiffs' sixth claim for relief is a breach of contract

22   claim.  (Compl. ¶¶ 141-149.)  Plaintiffs allege that Horizon

23   breached the loan contract(s) by (1) failing to convert the

24   Subject Loan into "a permanent mortgage loan on the day the

25   construction period end[ed]," and (2) "charging interest before

26   the construction period ended."  (<u>Id.</u> ¶¶ 143-144.)

27    "[T]o state a claim for breach of contract, the plaintiff

28   must plead: 1) the existence of the contract; 2) plaintiff's

20

1   performance or excuse for nonperformance of the contract; 3)

2   defendant's breach of the contract; and 4) resulting damages."

3   <u>Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.</u>, 116 Cal.

4   App. 4th 1375, 1391 n. 6 (2004).   On a motion to dismiss, the

5   court need not accept allegations as true if they are

6   contradicted by documents before the court.   <u>Sprewell v. Golden</u>

7   <u>State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).   "[W]hen a

8   written instrument is attached to the pleading and properly

9   incorporated therein by reference, the court may examine the

10  exhibit and treat the pleader's allegations of its legal effect

11  as surplusage."   <u>Burnett v. Chimney Sweep</u>, 123 Cal. App. 4th

12  1057, 1064 (2004) (quoting <u>Lumbermens Mut. Cas. Co. v. Vaughn</u>,

13  199 Cal. App. 3d 171, 178 (1988).)

14      Plaintiffs' allegation of breach by non-conversion of the

15  Subject Loan fails because plaintiffs do not assert any facts or

16  evidence explaining what the alleged breach entailed.   Indeed,

17  plaintiffs do not allege what changes in the loan were meant to

18  take place after the conversion, but ultimately did not.   As

19  such, it is unclear what Horizon was supposedly obligated to do

20  or what comprised the alleged breach.   <u>See</u> <u>Schnelke v. JPMorgan</u>

21  <u>Chase Bank</u>, No. 2:09-cv-03119, 2010 WL 2546100, *3 (E.D. Cal.

22  Jun. 23, 2010) (dismissing contract claim where plaintiff failed

23  to allege where in his mortgage loan contract, or any contract,

24  certain terms were memorialized); <u>see</u> <u>also</u> <u>Logan v. Resmae Mortg.</u>

25  <u>Corp.</u>, 2009 WL 5206716, *4 (E.D. Cal. Dec. 24, 2009) (finding

26  that the plaintiff's assertion of vague promises by the defendant

27  were not sufficient to show the existence of a contract).

28  /////

1    Further, plaintiffs' non-conversion allegation is
2    contradicted by both the terms of the contract and allegations of
3    the complaint.  According to plaintiffs' exhibits, the Subject
4    Loan became a 30-year - i.e., "permanent" - loan at the end of
5    the construction period. (See Matlock Decl., Ex. D) ("On the day
6    after the Construction Period ends, the loan evidenced by this
7    Note will be a permanent mortgage loan.").  Further, in their
8    complaint, plaintiffs themselves allege that the Subject Loan
9    remained in place beyond the end of the construction period, and
10   plaintiffs continued making payments on it until they defaulted
11   in April 2008.  (Compl. ¶ 44.)

12       Plaintiffs' assertion that Horizon breached the contract by
13   charging interest is also contradicted by the plain terms of the
14   contract.[8]  Specifically, by paragraph 2.A of the Allonge which
15   is captioned "Interest During the Construction Period," provides
16   in pertinent part: "Borrower will pay interest only. . . at the
17   rate of *prime* + 0% during the Construction Period of the loan . .
18   . Borrower will make monthly interest payments by the 15th of
19   each month for the amount billed by the Note Holder." (Matlock
20   Decl., Ex D) (emphasis added.)  Further, plaintiffs make no
21   factual allegations to support an oral or written modification of
22   this agreement.  Accordingly, looking to the four corners of the
23   contract, plaintiffs agreed to interest charges during the
24   construction loan period.

25

26       [8]   In their Opposition, plaintiffs do not address or
27   defend their claims that defendant Horizon wrongly charged
     interest during the construction period, despite Horizon's
28   argument that the Allonge states interest would be charged during
     the construction period.

For these reasons, Horizon's motion to dismiss plaintiffs' breach of contract claim is GRANTED with leave to amend.

**F.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' twelfth claim for relief asserts that defendants breached the implied covenant of good faith and fair dealing based on the same assertions listed under their breach of contract claim. (Compl. ¶¶ 143-44.)

"To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." Fortaleza v. PNC Fin. Servs. Group, Inc., 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009).  Further, "a breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990).  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1093-1094 (2004).

To the extent this court has concluded that plaintiffs cannot show how defendant Horizon failed in any way to perform pursuant to the terms of the contract, and plaintiffs' loan documents indicate that interest was to be charged during the construction period, Horizon's motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is GRANTED with leave to amend.

23

**G.   Breach of Fiduciary Duty, Negligent Lending, and Constructive Fraud**

In counts seven, eight, and nine, plaintiffs assert claims against Horizon for breach of fiduciary duty (Count 7), constructive fraud (Count 8) and negligent lending (Count 9). (<u>Id.</u> ¶¶ 150-178.)   Specifically, plaintiffs allege that they "perceived their relationship with Jabout as very close and relied on Jabout's financial advice implicitly." (Opp.'n at 9.) Plaintiffs allege that Horizon's fiduciary duty arose because "[t]he relationship of a lender to a borrower is quasi-fiduciary when a lender (Defendant Horizon) takes on an advisory role through its agent (Defendant Jabout), and borrowers reasonably expect a lender not to wrongly apply payments, wrongly charge late fees, or falsely calculate monthly principal and interest amounts due." (<u>Id.</u> at 10.)   Horizon moves to dismiss plaintiffs' seventh, eighth, and ninth claims on the basis that these claims can lie only against parties in relationships that give rise to special duties.   (MTD at 15.)

**1.   Fiduciary Duty**

To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused by the breach.   <u>Roberts v. Lomanto</u>, 112 Cal. App. 4th 1553, 1562 (2003).   However, "[a]bsent special circumstances. . . a loan transaction is [an] at arms-length [transaction] and there is no fiduciary relationship between the borrower and lender." <u>Oaks Mgmt. Corp. v. Superior Court</u>, 145 Cal. App. 4th 453, 466 (2006). "A commercial lender is entitled to pursue its economic interest

24

in a loan transaction.  This right is inconsistent with the

obligations of a fiduciary, which require that the fiduciary

knowingly agree to subordinate its interests to act on behalf of

and for the benefit of another." Gonzalez v. First Franklin Loan

Services, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, *13 (E.D.

Cal. Jan. 11, 2010).  A lender, however, may be held vicariously

liable for breach of fiduciary duty when a broker, who is an

agent of the lender, breaches a fiduciary duty owed to the

borrower.  Id.

Plaintiffs claim that their "very close," "year-long"

friendship with defendant Jabout created a special circumstance

which caused Jabout's involvement in the loan transaction to

exceeded the scope of the conventional role as a mere broker.

(Compl. ¶ 17; Opp.'n at 9-10.)  Further, plaintiffs allege that

this special circumstance extends to Horizon as a result of an

agency relationship that existed between Horizon and defendant

Jabout.  (Opp.'n at 9-10.)  However, as explained *supra*,

plaintiffs allege no facts to show how Horizon authorized Jabout

to represent and/or bind it, which is necessary to set forth an

agency relationship.[9]  CCP § 2295; Children's Institute, Inc.,

177 Cal. App. 4th at 403-04.  Plaintiffs, therefore, have not

demonstrated that Horizon owed plaintiffs a fiduciary duty which

could give rise to a claim for breach of that duty.  Accordingly,

Horizon's motion to dismiss plaintiffs' breach of fiduciary duty

claim GRANTED with leave to amend.

---

[9]    Because plaintiffs' agency allegations are
insufficient, the court does not reach the merits of plaintiffs'
argument that a fiduciary duty was owed by defendant Jabout or
any of the other defendants.

1          **2.   Negligence and Constructive Fraud**

2          Claims for negligence and constructive fraud also require a

3   duty of care element.  "[T]he threshold element of a cause of

4   action for negligence is the *existence of a duty* to use due care

5   toward an interest of another."  <u>Glenn K. Jackson, Inc. v. Roe</u>,

6   273 F.3d 1192, 1196-1197 (9th Cir. 2001) (applying California

7   law) (quotations and citations omitted)(emphasis added).

8   Additionally, "[c]onstructive fraud is. . . applicable only to a

9   *fiduciary* or confidential relationship."  <u>Assilzadeh v.</u>

10  <u>California Federal Bank</u>, 82 Cal. App. 4th 399, 415 (2000)

11  (emphasis added).

12         Inasmuch as no fiduciary duty exists between a lender and a

13  borrower and the court finds that plaintiffs have not

14  sufficiently plead an agency relationship between Horizon and any

15  of the other alleged duty-holding defendants, Horizon's motion to

16  dismiss plaintiffs' claims for negligence and constructive fraud

17  are GRANTED with leave to amend.

18  **H.   California Civil Code § 1916.7 Claim**

19         Plaintiffs allege the "[S]ubject [L]oan is an adjustable

20  rate loan within the meaning of CC [California Civil Code] §

21  1916.7."  (Compl. ¶ 220.)  Further, plaintiffs claim they "did

22  not receive a disclosure notice in the form prescribed by CC §

23  1916.7(c)."  (<u>Id.</u> ¶ 221.)   Horizon asserts that the disclosures

24  required by Section 1916.7 appear to be preempted in many

25  circumstances by the federal Alternative Mortgage Transactions

26  Parity Act of 1982 ("AMTPA"). (MTD at 16-17.)

27         The AMTPA provides in part that "[a]n alternative mortgage

28  transaction may be made by a housing creditor in accordance with

                                    26

this section, notwithstanding any State constitution, law, or regulation." 12 U.S.C. § 3803. "[T]he term 'alternative mortgage transaction' means a loan or credit sale secured by an interest in residential real property ... in which the interest rate or finance charge may be adjusted or renegotiated." 12 U.S.C. § 3802(1)(A).

The Ninth Circuit has stated that AMTPA does not provide for complete preemption, but only of those state law terms that conflict with AMTPA's terms. <u>Ansley v. Ameriquest Mortg. Co.</u>, 340 F.3d 858, 864 (9th Cir.2003); <u>Quicken Loans, Inc. v. Wood</u>, 449 F.3d 944, 950 (9th Cir. 2006); <u>accord</u> National Home Equity Mortgage Association v. Face, 239 F.3d 633 (4th Cir. 2001); <u>Black v. Financial Freedom Senior Funding Corp.</u>, 92 Cal. App. 4th 917, 930 (Cal. App. 2001), cert. denied, 536 U.S. 959 (2002) ("the phrase 'any state constitution, law, or regulation' can be interpreted as implicitly limited to those that prohibit or impede alternative mortgage transactions or that conflict with [AMTPA's] federal regulations.").

The language of the statute provides that conflicting state laws governing alternative mortgage transactions are preempted where those transactions comply with relevant Office of Thrift Supervision[10] regulations. <u>Hafiz v. Greenpoint Mortg. Funding, Inc.</u>, 652 F. Supp. 2d 1039, 1048 (N.D. Cal. 2009) (citing 12 C.F.R. 560.35, 560.210, 226.19(b), 226.20(c)).) "Regulations have been issued with respect to [] four aspects of mortgage

---

[10]    The Office of Thrift Supervision is a United States federal agency under the Department of the Treasury which creates regulations relating to AMTPA.

financing: Late charges; Prepayments; Adjustments to home loans;

and *Disclosures for variable rate transactions*." <u>Ansley</u>, 340

F.3d at 863, n.1 (citing 12 C.F.R. §§ 560.33-560.35, 560.210,

560.220) (emphasis added).)  Accordingly, alternative,

conflicting, or more rigorous state law disclosure requirements

would conflict with AMTPA regulations.  <u>See</u> <u>Hafiz</u>, 652 F. Supp.

2d at 1048.

Here, plaintiffs have not asserted any facts regarding how

the Section 1916.7 disclosure provisions harmonize with the

relevant provisions of AMTPA, nor have plaintiffs responded to

defendants' assertion that Section 1916.7 is preempted.

Consequently, Horizon's motion to dismiss plaintiffs' Section

1917.6 claim is GRANTED with leave to amend.

## I.   Unjust Enrichment

Plaintiffs tenth claim for relief asserts that "Horizon and

its agents, and Loanguy.com" were unjustly enriched by

plaintiffs' monthly loan payments, fees, and interest because the

contract was procured by fraud and because defendants breached

the express terms of the contract making it unenforcable. (Compl.

¶ 179-186.)  As a result, plaintiffs assert they have a claim for

restitution.  Horizon responds that "because [the unjust

enrichment claim] is derivative of plaintiffs' other defective

claims, it must fail with them."  (MTD at 17.)

In order to establish a claim for unjust enrichment, a

plaintiff must plead "receipt of a benefit and unjust retention

of the benefit at the expense of another." <u>Lectrodryer v.</u>

<u>SeoulBank</u>, 77 Cal. App. 4th 723, 726 (2000).  Furthermore, the

plaintiff must demonstrate that the defendant received the

28

benefit through mistake, fraud, coercion or request.  <u>Nibbi</u>
<u>Bros., Inc. v. Home Fed. Sav. & Loan Ass'n</u>, 205 Cal. App. 3d
1415, 1422 (1988).

Alternatively, a court may grant restitution based on a
"quasi-contract theory."  <u>McBride v. Boughton</u>, 123 Cal. App. 4th
379, 388 (2004).  "Quasi-contractual" unjust enrichment is sought
in order to avoid unjustly conferring a benefit upon a defendant
where there is no valid contract.  <u>Id.</u>  However, under California
law, a quasi-contract action does not lie "when an enforceable,
binding agreement exists defining the rights of the parties."
<u>Paracor Fin. v. Gen. Elec. Capital Corp.</u>, 96 F.3d 1151, 1167 (9th
Cir. 1996); <u>Hedging Concepts, Inc. v. First Alliance Mortgage</u>
<u>Co.</u>, 41 Cal. App. 4th 1410, 1419-1420 (1996).

Plaintiffs' unjust enrichment claim fails because, as the
the court concluded *supra*, plaintiffs have insufficiently alleged
fraud or breach of contract, and thus, fail to state that Horizon
received and retained benefits and payments which they were not
entitled to.  Further, plaintiffs' alternative "quasi-contract"
theory fails as well.  Here, plaintiffs and defendants entered
into the Subject Loan, and none of plaintiffs allegations support
a claim that a valid contract did not exist between the parties.
As such, plaintiffs do not allege sufficient facts to maintain a
plausible claim for unjust enrichment.[11]

---

[11]   In addition, most California courts agree that there is
no cause of action for unjust enrichment.  <u>Walker v. Equity 1</u>
<u>Lenders Group</u>, 2009 WL 1364430, *9 (S.D. Cal. 2009); <u>Jogani v.</u>
<u>Superior Court</u>, 165 Cal. App. 4th 901, 911 (2008); <u>Melchior v.</u>
<u>New Line Productions, Inc.</u>, 106 Cal. App. 4th 779, 794 (2003)
("Unjust enrichment is a general principle, underlying various
legal doctrines and remedies, rather than a remedy itself.");
<u>Lauriedale Associates, Ltd. v. Wilson</u>, 7 Cal. App. 4th 1439, 1448

1  Accordingly, Horizon's motion to dismiss plaintiffs' unjust

2  enrichment claim is GRANTED with leave to amend.

3  **J.   California Civil Code § 2923.6 claim**

4  Plaintiffs' fifteenth claim for relief is for violation of

5  Section 2923.6.  Specifically, plaintiffs claim that after they

6  defaulted on their loan, Horizon was required to offer them a

7  loan modification that was in their best interest and that

8  Horizon failed to do this "when they offered and executed a so-

9  called 'loan modification' in January 2009 with a two-year loan

10  term and an excessive balloon payment in an amount of $1,015,050,

11  and then refused to offer a subsequent meaningful modification."

12  (Compl. ¶ 234.)  Defendant Horizon responds that no private right

13  of action exists under Section 2923.6.

14  In California, "[n]either a private right of action nor

15  actionable duty is discernable from section 2923.6 to defeat a

16  claim based on its violation."  <u>Manabat v. Sierra Pacific Mortg.</u>

17  <u>Co., Inc.</u>, No. CV F 10-1018 LJO JLT, 2010 WL 2574161, (E.D. Cal.

18  Jun. 25, 2010).  Indeed, "Section 2923.6 does not require a

19  lender to enter into a loan modification to serve the parties'

20  best interests."  <u>Id.</u>; <u>Zendejas v. GMAC Wholesale Mortg. Corp.</u>,

21  2010 WL 2490975, *5 (E.D. Cal. Jun. 16, 2010) ("[Section 2923.6]

22  in no way confers standing on a borrower to contest a breach of

23  that duty.  Other courts to consider this question have agreed

24  unanimously.") (internal citations and quotations omitted);

25  <u>Alford v. Wachovia Bank/World Savings Bank</u>, No. CV F 10-0091 LJO

26  ────────────────────

27  (1992) ("The phrase 'Unjust Enrichment' does not describe a
    theory of recovery, but an effect: the result of a failure to

28  make restitution under circumstances where it is equitable to do
    so.").

30

SMS, 2010 WL 415260, *10 (E.D. Cal. Jan. 26, 2010) (same);

Pittman v. Barclays Capital Real Estate, Inc., No. 09 CV 0241,

2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) ("[T]he cited

statute clearly addresses this concern by creating a duty between

a loan servicer and a loan pool member. The statute in no way

confers standing on a borrower to contest a breach of that

duty"); Farner v. Countrywide Home Loans, No. 08cv2193, 2009 WL

189025, *2 (S.D. Cal. Jan. 26, 2009) (same).

Because no private right of action exists, Horizon is

entitled to dismissal of plaintiffs' Section 2923.6 claim.

Accordingly, Horizon's motion to dismiss plaintiffs' Section

2923.6 claim is GRANTED without leave to amend.

**K.   California Business & Professions Code § 17200**

In their eleventh claim for relief, plaintiffs allege that

Horizon violated § 17200 of the California Business and

Professions Code ("UCL") by engaging in fraudulent business

practices.  (Compl. ¶¶ 189-202.)

UCL forbids acts of unfair competition, which includes "any

unlawful, unfair or fraudulent business act or practice." Id. §

17200.  UCL "incorporates other laws and treats violations of

those laws as unlawful business practices independently

actionable under state law." Plascencia v. Lending 1st Mortgage,

583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008); see also Farmers

Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992).

"California's UCL has a broad scope that allows for 'violations

of other laws to be treated as unfair competition that is

independently actionable' while also 'sweep[ing] within its scope

acts and practices not specifically proscribed by any other

1    law.'" <u>Hauk v. JP Morgan Chase Bank U.S.A.</u>, 552 F.3d 1114 (9th

2    Cir. 2009) (internal citations omitted). "Violation of almost

3    any federal, state, or local law may serve as the basis for a UCL

4    claim." <u>Plascencia</u>, 583 F. Supp. 2d at 1098 (citing <u>Saunders v.</u>

5    <u>Superior Court</u>, 27 Cal. App. 4th 832, 838-839 (1994)).

6        Plaintiffs' UCL claim is founded upon the same allegations

7    as their fraud claim, and as set forth *supra*, plaintiffs'

8    allegations are insufficient to state a claim for fraud against

9    Horizon. Accordingly, Horizon's motion to dismiss plaintiffs'

10    claim for violations of California Business & Professions Code §

11    17200 is GRANTED with leave to amend.[12]

12                          **CONCLUSION**

13        For the foregoing reasons, defendant Horizon's motion to

14    dismiss is GRANTED. Plaintiffs' TILA, rescission and continuing

15    violation claims; RESPA § 2604 claim; Section 2923.6 claim; and

16    predatory lending "claim" are dismissed without leave to amend.

17    As to all other claims, plaintiffs are granted fifteen (15) days

18    from the date of this order to file a second amended complaint in

19    accordance with this order. Horizon is granted thirty (30) days

20    from the date of service of plaintiffs' second amended complaint

21    to file a response thereto.

22

23

24        [12]    Plaintiffs' thirteenth cause of action is a predatory
lending practice "claim." Plaintiffs characterize "predatory

25    lending practice" as "an umbrella term [used] to describe some of
the other claims alleged in this action, such as claims under

26    TILA, RESPA and California UCL." (Opp.'n at 13.) In other
words, plaintiffs' thirteenth cause of action is not a cause of

27    action at all; it simply restates Horizon's alleged violations of
TILA, RESPA, and UCL. As already stated, plaintiffs fail to

28    state a claim pursuant to these statutes; accordingly, Horizon's
motion to dismiss plaintiffs' predatory lending practices "claim"
is GRANTED without leave to amend.

IT IS SO ORDERED.

DATED: November 22, 2010

_____
FRANK C. DAMRELL, JR.
United States District Judge